23-1024 Troveris v. SkySail Concepts Dismiss the original complaint, having conducted no claim construction proceedings of any kind, having rejected the appellant's request for opportunity for leave to amend, without making any finding whatsoever that that request was not in good faith or was futile. And then the District Court engaged in a variety of steps and analyses which are both contradictory to the result and, in fact, support reversing and remanding this case under both Step 1 and Step 2 of ALICE. Can I ask you just about your point about claim construction? Did you offer up certain claim constructions that are clearly disputed and did you reject even constituting those? What dollars was that claim? Your Honor, the Court's opinion in this matter is a bit confused, or confusing at least to me reading it, and here's why. Well, I'll just ask you what you did. Okay, thank you, Your Honor. We did not offer constructions to the District Court below, although in the opposition to the motion to dismiss, three terms were identified as potentially requiring construction. And, Judge, to your question, I think, one of the things that's interesting here is that the Court, for one of the three terms for which the appellant requested construction, and that term is price inflation parameter, this is what the Court wrote in her opinion at appendix page 68, and I'll be quoting the Court. As for price inflation parameters, admittedly, these could be understood differently depending on the content of the factors employed or the particular equations or algorithms selected. And then the Court concluded that these differences would not change the outcome, because in the Court's view, there was a fundamental economic process being claimed here, and not statutory subject matter. Your Honors, when the Court, under this Court's decisions of both Phillips and O2, says there's One of your initial points, you indicated you didn't get the opportunity to amend. Did you ever move to amend the complaint, or did you ever provide an amended complaint to the District Court? Your Honor, in the opposition to the motion to dismiss, counsel requested leave to amend if the Court were inclined to grant the motion to dismiss. And, Your Honor, we'll recall from the record that there was no hearing on this matter. The procedural history is very, very brief. Original complaint, motion to dismiss, briefing on the motion to dismiss, and then order from the District Court. And respectfully, as we point out, Judge Cunningham, in our reply brief, under the prevailing law of where the Ohio Court sits, which is, of course, the Sixth Circuit, it is an abuse of discretion under that Court's standards to deny a motion for leave without making any findings whatsoever, none whatsoever on the record, that the motion to leave was either, or the proposed amendment, I should say, were either futile or not in good faith. Here, the Court made no findings of any kind in the opinion. It simply dismissed the case on the original complaint, despite that request. So, I think, just to follow up on the answer to my question, it sounds like you said you made maybe a sentence in the motion to dismiss papers, the opposition papers, but no separate motion to amend. Is that an accurate statement? That is correct, because procedurally, there was not an opportunity to do so. The original complaint was filed. The motion to dismiss were filed. The briefing on the motion to dismiss occurred where the request for a motion to leave was noted to the District Court. Without any hearing, the Court granted the motion to dismiss. Well, what did you allege? I mean, in this, in follow-up to Judge Cunningham's claim, did you identify any factual allegations? Did you explain how the amendment would differentiate the case from what it was before the amendment? I don't know if it's in the appendix. Yes, Your Honor. There's a number of responses to this. One of the... I don't know if it was in the last sentence, Your Honor, but... Yes, Your Honor. Your Honor, I don't know that I would characterize it as a throwaway, of course. Okay, Your Honor. It's in Appendix 400-401. Okay. Your Honor, that is at least, thank you, Your Honor, Judge Cunningham, that is at least one location where it occurs. Therefore, any dismissal should... I thought there was, when I looked, I only saw one reference at the very end of your motion. Judge Clevenger, I believe that is correct. I'm not aware of any other requests by trial counsel. Your Honor, I'm not sure to what law you're referring to. Perhaps the court is referring to the Snap v. Sanderling case. They're doing it against sessions. Your Honor, I don't know that this is a throwaway, because the original complaint on its face, and is recognized by the district court, pled improvements to the process and to the structured order of the components as claimed that resulted in algorithmic improvements, the display of uniform and consistent bid results. Your Honor, I mean, I just thought, when I read bid along against sessions, it says a bearer requested an opposition and a motion dismissed without any indication of particular grounds from which the amendment is sought, does not constitute a motion within the contemplation of Rule 15a. Bid along against sessions, 871 Fed 3rd, 459 Act 469. So when I got that far in my research, I kind of gave up on your argument. Your Honor, I appreciate the... As I said, there's only one place that I saw a motion to amend, period, in your files. And it's this one reference that you're reciting. Your Honor, I would still suggest that the Sixth Circuit has held that when the request is made, the court cannot deny it without making any finding as to good faith or futility. And so, under Your Honor's hypothetical, the district... Well, do you have a case that says that? In the Sixth Circuit? Yes. Yes, Your Honor. It's cited in our reply brief. Well, in your motion, you cited CEOC versus Ohio, and then you have a parenthetical. Yes, Your Honor. Yes, Your Honor. Your parenthetical, at least, says, where a more carefully drafted complaint might state a claim, they have to give a chance. But you haven't alleged. You didn't give any basis. Like, well, if I get to amend this complaint, we can do such and such. Your Honor, the case that was cited in the reply brief before this court is from the Sixth Circuit, is Parchman v. S.L.M. Court, 896 F. 3rd, 728 at 736. And here is the quote from the brief, Your Honor. Under Sixth Circuit precedent, such, and I'm going to quote from the Sixth Circuit, such outright refusal to grant the leave without any justifying reason appearing for denial is not an exercise of discretion, but abuse of that discretion and inconsistent with the spirit of the federal rules. And that's the Parchman case at 736. Your Honor, with the request lodged, Judge Clevenger, to your point about the Bedouin case, this court made no determination whatsoever that the amendment was futile. It made no findings one way or the other, nor did it make any findings that the request wasn't fulsome, Your Honor, or that the crest wasn't ripe under rule of law. Well, you're making a decision about whether it's futile or not when you don't have any information that you've given her with respect to what the amendment will say or do. You don't need to make a representation here that the amendment will do X, Y, Z, and that's why it wouldn't be futile. She doesn't have to make a finding about futility when you haven't even made an allegation that it wouldn't be futile. Well, but on the claims of the patent as issued, Your Honor, and as she apparently took into consideration, the claims themselves specify that they enable fair comparison and scoring, scaling, and increase the speed and efficiency of the algorithmic analysis and of the presentation to the user of the system, and that's at Appendix 416. So even on the complaint, as alleged, dismissal was, with respect to the District Court in Ohio and Providence. One of the things we haven't gotten to, Your Honor, is as I'm mindful of my time, and I appreciate the questions on motions for leave, I understand the procedural posture of that case, of what that does, rather, for this case. The District Court's own opinion here, I think, instructs that remanding is required, and here is why. The District Court found that there were improvements that may well be deemed innovation. That's the quote from Appendix 70. She also found that there was ingenuity in the following claim language, to quote, render or refashion all PBM, pharmacy benefit management bids, into a uniform scoring framework, which understandably may assist in portraying the comparison. At least when you look at, was it Appendix 70? And I think it was 63 that you cited to us on these innovation concepts. I mean, you kind of, in some places, left out important parts of what she was saying, right? So on Appendix page 70, it says, those may well be deemed innovation as a matter of business acumen or economics. Like in some of them, in some of your brief, I would see you just put like a period in brackets, and I was thinking, well, what else is there? And there's a little bit more to what she's saying in some of these places on innovation. Thank you, Judge Cunningham. On that particular quote, that's the issue before this court. That's why that sentence is a list. The question before this court, as a matter of law and de novo review, is are these claims simply directed to economic or business acumen? They are not, Your Honor. That's what we have briefed before the court. And so what the court found, and I'm on page 70 of the appendix, Your Honor, from the actual opinion, it is directed to how PBM bids and pricing should be translated and rendered uniform to facilitate wiser, more reliable price comparisons. Your Honor, that is the reason, if there's innovation in that concept, that is not a matter of business or economic acumen. The prior sentence is where the court's opinion, I think, diverges from Alice, because by finding that there is translation of data that renders it uniform to facilitate wiser and more reliable price comparison, in the context of the claim language, the scoring, and the generating of the bid results, that then satisfies step two, because she has found it to be innovative. There is also on appendix page 31, Your Honor, which I believe you referred to, Judge Cunningham, that claim one facilitates. I'm talking about page 63, appendix page 63, but we can talk about appendix page 31. Okay, thank you. Sorry, Judge, I misheard you, and I'm keeping out of my time here. If you look at appendix 31 in the second full paragraph in the second sentence, the court's finding is that claim one facilitates price normalization by translating disparate bids into some common metric that allows for an apples-to-apples comparison. The court later then found that appendix page 56, with respect to the step... Well, wait a minute, but the sentence that follows, the one you just read, says that that is every bid as much fundamental economic activity and abstract concept as the risk hedging at issue in Bilski and Allen. Your Honor, but that's the point of appeal before this court. Was the district court right in concluding, having made this finding below, that the claim language, in fact, is purely economic or business acumen? We respectfully suggest it is not, and the reason, Your Honor... Your time is running out, so let me just ask you one question. Yes, Your Honor. You've had many years of jurisprudence in 101, a lot of which deal with claims like this. What are your best cases? What is the closest case you have? I mean, you cite McGraw. I mean, everybody who wants... But I'm not seeing the parallel between what's out in McGraw and what's out here and actually what the claims themselves say. So do you have a case where you found a claim non-abstract that really reads like the claims in your case? What's the closest one? Thank you, Your Honor. Of course, reading claims that are close, difficult exercise at best, right? I think EnFish is close, and so is Core Wireless, and here's why in EnFish. Self-referential databases, we all know the case. In that case, this court said that much of the advancement made in computer technology consists of improvements of software that, by their very nature, may not be defined by particular physical features, but rather by logical structures and processes. We do not see Bilski or Alice, or our cases, as exclusion to patenting this large field of technological progress. And notably, Your Honor, in EnFish, at least as the claims are described in the reported opinion, there was no hardware structure. There was a database that was claimed. There was logic that was claimed. That's EnFish, Your Honor. I'd also, mindful of my time, encourage the court to look at Core Wireless, which I think is also similar. That's the improved user interface for displaying items on a smaller screen. This patent, and the district court found this patent, allows for the display of information in a uniform way by making apples-to-apples comparisons through the 15 steps of the method, which did not exist prior. The court concludes that this is perhaps ingenious and innovative. And then she says, but it doesn't matter. Machine transformation tests, it doesn't matter. That's what's wrong with this opinion, Your Honor, at its core. Okay. Let's hear from the other side. Thank you, Your Honor. Good morning, Your Honors. If it pleases the court, I'm Bill Munier on behalf of Apelli SkySail. I think it makes sense to start with the issues that Your Honor started with. So with your permission, I'll do them in order. The claim construction issue, the complaint that the district court didn't do any claim construction, Truveris's entire claim construction request, if you can call it that, to the district court was just that there may be claim constructions that may affect. They didn't give any claim constructions. They didn't give any proposed claim constructions. And they didn't say how they may affect the 101 analysis. It was just perhaps there might be something out there. And that's at Appendix 397 through 98, which is part of their brief. And as we say in our briefs, it was incumbent upon them that if they thought there was a claim construction that could be relevant and to the analysis, they needed to identify that claim construction, that proposed claim construction, and tell the district court how it could affect the analysis. They did not. So we cite cases like Sanderling and Cleveland Clinic saying that was upon them. Since our brief, there's been more cases coming out that say the same thing. For example, three months after our brief was filed, the Trinity decision, 724F at 1355, at 1362. So this was just after our briefs. It said, quote, a patentee must do more than invoke a generic need for claim construction or discovery. Okay, I think we can ally that issue. All right. Claim construction and maybe even ally a request for the need of a complaint. My colleagues agree. So why don't we get to the heart of the claim. You've got an interesting and helpful chart, I think, on page 13 and 14 in your brief, which is the limitations of the claim. Sure. But what is your response to an issue for wireless, why this case is not similar enough to those cases to get them when they need to go? The pithy short answer is it's because the case is not similar to those at all, Your Honor. This case has to do with an abstract idea that is a series of requesting and collecting information, analyzing information, and then presenting the results of that analysis. Those are all abstract ideas on their own, and combined, they're all abstract ideas. And I think you've got plenty of case law in front of you that confirms that, that that's almost like the traditional form of an abstract idea. So that's an abstract idea. ENFISH, Core Wireless, those weren't about collecting information, presenting information. Those were actual specific improvements to technology, not an abstract idea, to technology. ENFISH was an improved computer database. It wasn't an abstract idea that used a computer to perform that abstract idea. It was an actual improvement to computers itself. And all the case law says in that instance where, like here, you've got a computer or they're now calling it a software type of claim, if it's an improvement to the computer technology itself, or if it's not in computers, just to technology itself, that can take it away from an abstract idea, even if there's an abstract idea baked in. For example, a mathematical formula by itself would be an abstract idea. But using that to develop a process for curing rubber, that is technology. Here, what we've got here is just abstract ideas about the best way to perform this type of reverse auction to pick a drug plan. The only thing that's added to that abstract idea is to do those steps, those abstract ideas, those things that you would do as a person in your mind or with a pen or paper, is to do it on a computer. Get it from a generic remote server. Get it from a phone. This is a long-standing historical practice, right? And I think they emphasize 1H in their briefing, the classifying claim. Classifying each historic drug claim into a particular set of historical drug claims into one or more third-party indicated drug classifications. I mean, this is maybe, as the judge said, I don't know if anybody's ever done this before, right? Well, the quick answer is, in their patent, it actually says that it was known to use these third-party standardizations in the background of the patent. But that's that. Well, actually, let's put that aside, because at the end of the day, it doesn't matter, I guess is what I would say. Because what they're really arguing is, well, it's an abstract idea, but it's a new and non-obvious abstract idea. It's a better way, what we've invented, a better way of doing reverse auction. Instead of using the standards that everybody provides with the bids, we're going to use a consistent standard. We're going to standardize these drug claims using a third party. That is still an abstract idea. The fact that they're saying it's a better abstract idea, a new abstract idea, doesn't matter, because it's still an abstract idea. Alice, right? We all know Alice. Abstract ideas are not patentable. The synopsis case that we cite, 8-9-F-3rd, 1138 and 1151. A claim for a new abstract idea is still an abstract idea. The Diamond case from the Supreme Court, American Axel from your own court. They all say, whether something's new or not, whether something's non-obvious or not. So is there any way to fix these claims? Not with respect to inventive concept. We can all figure out that if they invented some new computer, we could get through step two. But on step one, is there any way that this could be turned from an abstract idea to a patent-eligible subject matter? Well, based on what they say their invention is, I think the answer is no. Because the problem they identify is not one with technology, not one with computers. The problem they identify is a problem with an abstract idea itself. How to best perform a reverse auction. And they say the problem is that when you get a bid, it will have its own standard for a drug claim. And then another bid will have a different. So it's hard to compare apples to apples. So that's the problem they're dealing with. That's not a technology problem. That's not a computer problem. That's a reverse auction problem. That's an economic business problem. And their solution to that was, and what they're now saying is a novel or non-obvious idea, is instead of using the standardizations, the standards that are given with each bid, we'll use a third-party standardization. I'm sorry, categorization. Can you explain, I mean, this is, we get a lot of these Atlas-type patents, and some of them are pretty old, so you can explain the predated, the case law flowing forward. This one's 2020. This is, this patent was issued after most of the cases we've discussed today were already out there. And my recollection of the discussion of prosecution history in the briefs is that this was rejected repeatedly and then granted. Do you know, I can't remember, was there some intervening action or statement by the patent owner that would explain what the basis for removing the rejection was? If you recall, that's what the district court tried to find. Because Truveris had argued, hey, it was issued, the five rejections were overcome, so that must show that there's a good reason for that. But they never identified the reason. Well, obviously, every case that we have that involves a one-to-one challenge is based on a patent issue. Exactly. That doesn't get you very far. But this is, I guess it's interesting and telling to me that this was a recently issued patent, which makes me want to think harder about what the issue is. I will say that my recollection is there were amendments, but what they're pointing to now, for example, the use of the third party, disregarding the classifications in the bids and using the third party, that was already in the claims. The use of that information to actually score the bids, to estimate costs, that was already in the claims. As the district court found, there really doesn't seem to be anything jumping out as to why the rejection was rescinded after five times here. There was nothing specifically stated in the prosecution history that explained what was going on in terms of allowing it after the one-to-one rejection. My recollection, and the record certainly doesn't have anything about the examiner saying, here's why I've withdrawn this. Your Honor, I didn't see anything in your editor's brief that made a strong argument that the reason why it got through at the end after all these rejections was this, this, this, and this. Right? Unsurprisingly, I agree with you, Your Honor. There wasn't anything there about that. Because there really isn't anything there. What they've got now is... And we did not. We did not, Your Honor. And again, it's what amendments were there are not what they seem to be relying on right now as the, let's say, inventive concept that would somehow transform this list of abstract ideas, these mental steps, into something that was patentable subject matter. And they really can't point to anything because it's just do these with a computer, which the case law obviously says is not good enough. So at the end of the day, where before they argued to the district court, these are all improvements to computer systems. The reason this is not an abstract idea is because there's an improvement to computer system here. The reason it's patentable is that it's an improvement to computer system here. But now they've dropped that. And it's just really if you sift through all the complaints in their briefs about what the district court looked at or didn't look at, etc., etc., what is their actual argument as to why it's patentable? And it really boils down to because we came up with a good abstract idea. We came up with a new abstract idea. We came up with the idea of when we do a reverse auction, we're going to use this information to compare bids and not other information. But they're primarily focused on claim one. Is there any differential information we need to know with respect to the other potential claims? I think claim four is also discussed. Sure. I think claim four probably it makes sense to talk about. I think the short answer is no. As the district court noted, only claim one was actually identified as infringed in the complaint, and the complaint went through the basis for the infringement analysis, and it all had to do with the limitations of claim one. So claim four was not actually specified, and there was no basis for infringement given in that. But there were in the opposition to the district court, there were three other claims identified other than one. I shouldn't say identified. Mentioned. It was 11 and 12, but that was mentioned at, I think, A389 through 90, which is another part of their brief. But all they said about 11 and 12 was claim one and 11 and 12 have this limitation, and it means it's not abstract or it's patentable. So they didn't have any different arguments about 11 and 12 that didn't also apply to one. So everything that we've been talking about, one, if 11 and 12 were asserted, would apply there. And, you know, the district court found that, right, at A67 of the appendix note 23. There's no different analysis because they make the same argument about 11 and 12 that they do for one. So that leaves claim four. Claim four is a dependent claim, not asserted, and certainly not identified or named and no basis for giving it. But they alleged, again, in their opposition, that, quote, claim four adds an inventive concept that is plainly unconventional. That's a key word they use a lot, unconventional, wherein, this is the claim, wherein a first scoring element is associated with plan costs and a second scoring element is associated with plan terms and definitions. Again, that's just an abstract idea. They didn't explain how that's an improvement to computers, how that's an improvement to technology. At best, that's an improvement to the abstract idea of how are you going to score these bids? How are you going to assess these bids? And the district court rightly said, you haven't shown me anything that's actually the alleged improvement to technology in claim four. You just say, quote, unquote, it's unconventional. And, again, that unconventional word shows up a lot. An unconventional abstract idea is still an abstract idea. It's not patentable. And so the district court went on to say, I don't see anything that saves claim four here either, but I'm not going to find it invalid because it hasn't been asserted. I think the way the court put it was at A71, appendix 71, footnote three of the opinion. This case, and this would apply also to the other two claims that were mentioned, 11, 12. The court said, this case does not require, and therefore does not allow, the court to issue any advisory opinion on claims other than claim one of the 920, because no other claims were at issue. No other claims were asserted in the complaint. Okay. I think it's close to your time. Thank you, Your Honors. Your Honors, may I have 60 seconds? Sir, I will restore two minutes of your time. So, come on up. Thank you, Your Honor. That was more than generous. I was only going to ask for 60 seconds, but I appreciate that courtesy. I'll know when an opinion issues, Your Honor. I want to address a couple of final points that were raised by Appellee's counsel. There was a question about where one can find in the record the prosecution history and what the changes were between the prior refusals to allow and the allowance. Your Honors may find that we briefed that in our opening brief, starting at page 10 of that brief, and it goes on until about page 13 of that brief. And in particular, it's referencing the prosecution history, which the court can find in appendices or appendices sites 416. Well, it actually starts at 412 and goes through our citations end at 416. Actually, our citations end at 419 and 420. And one of the reasons this is important is that the amendment that occurred at the end to Judge Clevenger's question was that the remote database was explained and that why that remote database was a practical improvement over current technology. And I won't read the brief back to you. The court can find it itself. But the notion was that by disregarding the PBM-indicated drug classifications and using this remote database to substitute its own third-party classifications, and using that historical information, that process of the remote database allowed a more efficient and accurate scoring generation algorithm to be completed. And I think, Judge Prost, I have 20 seconds to your last question. You asked, or to a last point, you asked counsel, how could you amend these claims? Because they were allowed well after Alice.  is that there is no statutory protection for a process or method claim whatsoever. Because these claims, as found by the district court, possess ingenuity, novelty, and prepared and gave an advantage to the patent holder. She made those express findings. In this case, if accepting the position of the appellee would result in a bright-line rule that a process or a method is simply not patentable, that is not the law of the United States. Thank you. Thank both sides. The case is submitted.